***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Deluca and the briefs and arguments of the parties. The plaintiff has shown good grounds to reconsider the evidence. Accordingly, the Full Commission reverses the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 ***********
The Full Commission finds as a fact and concludes as a matter of law the following, which were entered into by the parties as:
 STIPULATIONS
1. On March 19, 2009, plaintiff was working as a volunteer for the South River-Merrimon Fire EMS. *Page 2 
2. Defendant Key Risk Management Services is the administrator on the risk for the subject claim.
3. Plaintiff has complied with all conditions precedent/statutes of limitation pursuant to N.C. Gen. Stat. §§ 97-22, 97-23 and 97-24.
4. The parties are subject to and bound by the North Carolina Workers' Compensation Act.
5. On March 19, 2009, plaintiff suffered an injury to his right leg, diagnosed as a complete rupture of the right Achilles tendon, arising out of and in the course of his employment with employer-defendant when he stepped across a ditch to get to an ambulance. Plaintiff contends and defendants deny that the injury was an "injury by accident" as defined in N.C. Gen. Stat. § 97-2(6).
6. The minimum compensation rate payable to a volunteer fireman under N.C. Gen. Stat. § 97-2(5) is sixty-six and two-thirds percent (66 2/3%) of the maximum weekly benefit rate established in N.C. Gen. Stat. § 97-29. In 2009, the maximum weekly rate was $816.00, resulting in a compensation rate of $544.00.
7. Plaintiff was released from his doctor's care effective July 23, 2009, and returned to volunteer service with defendant-employer on July 24, 2009.
8. Stipulated Exhibit 1 consisted of the medical records. Stipulated Exhibit 2 contained the Industrial Commission forms. The Pre-Trial Agreement was Stipulated Exhibit 3. Plaintiff's recorded statement was Stipulated Exhibit 4. Photos of the gully where the incident took place were stipulated into evidence, although listed as Plaintiff's Exhibit 2. The Plaintiff's call log was stipulated into evidence, although it was designated as Plaintiff's Exhibit 3.
 *********** *Page 3 
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 70 years old, born on December 29, 1939. Plaintiff lives in Beaufort. Plaintiff is 6 feet tall and weighs 240 pounds. Plaintiff had no prior right foot or right leg injuries. Plaintiff is retired from his regular employment.
2. Plaintiff has been working with defendant-employer since 1996, including work as Captain of Truck 2 since 1998, and medical responder since 2008; he is also chairman of the safety committee, and serves on the finance and budget committee, the by-laws committee, and the building and grounds committee.
3. As Captain of Truck 2, plaintiff's duties include driving the fire truck to call scenes where he stays with the truck and operates the truck's panel and pump handles. He makes sure that "the guys" have water. Plaintiff does get in and out of the truck when responding on fire calls. Plaintiff does not man the hoses or directly fight fires, but rather he stays with and operates the fire truck. According to a call log prepared by the defendant-employer, of the 99 calls to which plaintiff has responded since March 4, 1996, approximately 47 have been fire related calls.
4. As a medical responder, plaintiff's duties include driving an ambulance and responding to emergency calls such as motor vehicle accidents and sick calls such as cardiac and respiratory events. Once on scene, plaintiff provides support to the emergency medical technicians (EMTs), assists with patients, and transports patients to the hospital. The ambulance is not an off-road vehicle, is driven on the road, and is usually parked on flat surfaces such as roadways and driveways. Plaintiff is not certified in extrication. *Page 4 
5. Plaintiff's job duties as chairman of the safety committee, and member of the finance and budget committee, by-laws committee, and building and grounds committee, are administrative in nature.
6. Plaintiff's job duties as a medical responder require him to walk across uneven surfaces such as yards and unpaved roads and driveways. However, plaintiff could not recall ever having to cross a ditch to support an EMT while on scene as a medical responder, or at any other time while working for the defendant-employer.
7. On March 19, 2009, plaintiff was dispatched in his ambulance to a domestic assault case at a private residence located at 118 Hidden Harbor in the South River District of Carteret County. Upon his arrival, the assault victim was sitting down in the front yard being treated by an EMT. In order to get as close to the patient as possible, instead of parking in the driveway, plaintiff parked the ambulance in the road, directly in front of the patient. Thereafter, plaintiff got out of the ambulance. He crossed what has been referred to as a drainage ditch and walked to the EMT to determine his needs, including whether transport would be required. The EMT told plaintiff they were going to transport the patient. Plaintiff started back to the ambulance to open the back doors. When plaintiff reached the ditch, which was approximately 14 feet wide and 20 inches deep. He took several steps down the side and across the bottom of the ditch. Plaintiff took a normal step as he started up the other side of the ditch. As he transferred weight to the right heel, he heard a pop. Plaintiff immediately experienced acute right calf pain. Plaintiff proceeded to the ambulance where he opened the doors and, after helping walk the patient into the ambulance, drove the patient to the hospital.
8. Chief Edward Wallace has been a member of the South River-Merrimon Fire EMS since 1987, including serving as Chief since 2005. In describing plaintiff's job duties as a *Page 5 
medical responder, Chief Wallace indicated that plaintiff worked in a support role to the EMTs and that it would not be unusual for him to walk on uneven surfaces such as yards, unpaved roads, and driveways. Conversely, however, Chief Wallace indicated that crossing a gulley or ditch would not be a usual or customary duty of plaintiff's volunteer work with the EMS squad. Moreover, Chief Wallace could not recall a single occasion where he had observed the plaintiff crossing any type of ditch while working for defendant-employer. Chief Wallace also described the terrain of eastern Carteret County as flat and noted that fire trucks and ambulances are not off-road vehicles and are usually operated and parked on flat surfaces.
9. The greater weight of the evidence is that plaintiff sustained a compensable injury to his right leg arising out of and in the course of his employment with the defendant-employer on March 19, 2009. Plaintiff arrived on scene to find the patient located in a front yard instead of inside a house. This caused plaintiff to park the ambulance in the roadway, directly in front of the patient, instead of the driveway. Plaintiff had to cross the ditch in order to support the EMT who was treating the patient. This was an unforeseen circumstance, unusual condition, and an interruption of plaintiff's normal work routine. During plaintiff's thirteen years of volunteer service, he could not recall ever having to cross a ditch in support of an EMT or while working for defendant-employer. Consistent therewith, Chief Wallace, who has been a member of the South River-Merrimon Fire EMS since 1987, could not recall ever having seen the plaintiff cross a ditch while working for defendant-employer.
10. After plaintiff drove the ambulance to the Emergency Department at Carteret General Hospital and got the patient checked in, he sought treatment for himself at the hospital where the following history was recorded: "The patient is a 69-year-old male who presents . . . with history of acute onset of right calf pain which occurred earlier this evening. He states that he *Page 6 
was responding to an EMS call and stepped over a ditch with his right foot. When he put his weight down he felt something pop in his right calf." Following an examination, plaintiff was placed in a posterior fiberglass splint and fitted with crutches; he was also prescribed pain medications and advised to seek follow up treatment with an orthopedic surgeon, pursuant to a diagnosis of calf strain and possible gastroc tear.
11. On March 23, 2009, plaintiff saw orthopedic surgeon Jeffrey K. Moore, M.D. Following his examination, Dr. Moore diagnosed plaintiff with a complete rupture of the right Achilles tendon. On March 25, 2009, Dr. Moore performed tendon repair surgery where he also "found a large piece of bone to which the posterior 50% of the Achilles is attached. This piece was avulsed and migrated proximally about 2-3 cms." After the surgery, wherein Dr. Moore sutured the frayed tendon to the bone fragment, and anchored the bone fragment back into the heel with a screw, plaintiff was non-weight bearing with a splint and crutches. During his recovery, plaintiff fell several times and the bony fragment pulled up several millimeters; he was then placed in a short cast and continued on crutches and non-weight bearing. A month later, the cast was removed and his x-rays looked good; thereafter, plaintiff was fitted with a pneumatic walking boot and started on physical therapy, which he completed on June 25, 2009. On July 7, 2009, Dr. Moore released the plaintiff on a return as needed basis. At that time, plaintiff was noted to be pain free but still ambulating with a slight limp; Dr. Moore instructed plaintiff on continued exercises and cautioned him to be very careful in his activities to prevent strain and re-rupture.
12. Effective July 24, 2009, plaintiff was allowed to return to his volunteer work with defendant-employer. *Page 7 
13. On December 14, 2009, Dr. Moore provided an opinion that plaintiff will retain a ten percent (10%) permanent partial disability of the right leg. In addition, Dr. Moore has provided the following work restrictions: "No jumping of any kind (e.g., from a height, or across a ditch.)"
14. When asked how the restrictions assigned by Dr. Moore had affected his job duties, plaintiff indicated that said restrictions had not had any effect.
15. The greater weight of the evidence establishes that plaintiff was temporarily totally disabled from work for the period from March 19, 2009, through July 23, 2009.
16. The greater weight of the evidence is that plaintiff sustained a 10% permanent partial disability of the right leg as a proximate result of the incident on March 19, 2009, when plaintiff stepped across a ditch while working in his capacity as a medical responder for defendant-employer.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On March 19, 2009, plaintiff sustained a compensable injury by accident arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6). An "accident" must involve more than merely carrying on the usual and customary duties in the usual way, but rather involves the interruption of the work routine and the introduction thereby of unusual conditions likely to result in unexpected consequences. Harding v. Thomas Howard Co.,256 N.C. 427, 124 S.E.2d 109 (1962). In this case, the conditions plaintiff experienced on March 19, 2009, compared to previous shifts, were unusual due to the location of the patient *Page 8 
upon plaintiff's arrival, the location where plaintiff parked the vehicle, and the drainage ditch that plaintiff needed to cross in order to perform his job duties. Accordingly, the greater weight of the evidence shows that the unusual working conditions on March 19, 2009, interrupted plaintiff's work routine and plaintiff was faced with unusual conditions likely to result in an injury.Dolbow v. Holland Industrial, Inc.,64 N.C. App. 695, 308 S.E.2d 335 (1983), disc. review denied,310 N.C. 308, 312 S.E.2d 651 (1984).
2. Plaintiff's treatment following the March 19, 2009 injury by accident, including, but not limited to, treatment and testing at Carteret General Hospital, and by Dr. Jeff Moore, was reasonable and necessary to effect a cure, give relief and/or lessen plaintiff's period of disability, and was the direct and proximate result of the March 19, 2009, injury by accident. N.C. Gen. Stat. §§ 97-25, 97-25.1.
3. Plaintiff was temporarily totally disabled from March 19, 2009, through July 23, 2009. Plaintiff is entitled to payment of compensation at the rate of $544.00 per week during this period. N.C. Gen. Stat. § 97-29.
4. Plaintiff retains a ten percent (10%) permanent partial impairment to his right leg as a result of his compensable injury. Plaintiff is entitled to payment of compensation for twenty (20) weeks for his permanent partial impairment. N.C. Gen. Stat. § 97-31(15)
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law the Full Commission makes the following:
 AWARD
1. Defendants shall pay plaintiff, subject to the attorney's fee approved below, temporary total disability compensation at a rate of $544.00 per week for the period March 19, 2009, *Page 9 
through July 23, 2009. Those payments have accrued and shall be paid in a lump sum, subject to the attorney's fee approved below.
2. Defendants shall pay plaintiff permanent partial disability benefits in the amount of $544.00 per week for twenty (20) weeks beginning July 24, 2009, for the ten percent (10%) permanent partial disability of his right leg.
3. Defendants shall pay all medical expenses incurred or to be incurred as a result of plaintiff's compensable injury when bills for the same have been submitted according to established Industrial Commission procedures.
4. A reasonable attorney's fee of twenty-five percent (25%) of the compensation awarded to Plaintiff in paragraphs one (1) and two (2) above, is hereby approved to be deducted from the lump sums accrued and thereafter, every fourth (4th) payment due Plaintiff shall be paid directly to Plaintiff's attorney.
5. Defendants shall pay the costs.
This the 7th day of December, 2010.
 S/___________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING:
S/___________________ CHRISTOPHER SCOTT COMMISSIONER
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER *Page 1